RAFAEL DE J. CORDERO, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada, y FÉLIX

Narváez, peticionario ante la Comisión Industrial. El Mismo, recurrente, *v.* La Misma, demandada, e Higinio Lliteras, peticionario ante la Comisión Industrial.

Núms. 231 y 233.—*Sometidos:* Noviembre 24, 1941. *Resueltos:* Enero 23, 1942.

*Hon. Procurador General George A. Malcolm, E. de Aldrey, Procurador General Auxiliar, y Víctor J. Vidal González y G. Atiles Moréu,* abogados los dos últimos del Fondo del Estado, abogados del recurrente; *José Benet y Virgilio Brunet,* abogados del obrero, peticionario ante la Comisión Industrial, en el caso núm. 231 y *Virgilio Brunet* 'y *José L. Novas,* abogados del obrero, peticionario ante la Comisión Industrial, en el caso núm. 233; *Pedro M. Porrata,* como *amicus curiae.*

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

En el primero de estos casos el obrero Félix Narváez en noviembre 22, 1939, sufrió extensas quemaduras mientras trabajaba para su patrono Chévere & Co., de San Juan, P. R., patrono asegurado.

El 13 de febrero siguiente el Fondo del Seguro del Estado por su administrador decidió que el accidente era uno del trabajo, habiendo quedado el obrero con una incapacidad parcial permanente, teniendo derecho, por tanto, a recibir una compensación adicional de la mitad del jornal que ganaba

por un período de 306 semanas, equivalente a $1,064.88, a serle satisfecha en pagos parciales de $13.92 cada cuatro semanas.

No conforme el obrero por entender que había quedado completamente inútil de ambas manos, cuello, oídos, cara (sic) y brazos, apeló para ante la Comisión Industrial, y celebrada la vista de ley, la comisión revocó la decisión del administrador, por entender que se trataba de un caso de incapacidad total de las funciones fisiológicas del obrero, y declaró que éste tenía derecho a recibir del fondo en concepto de compensación $13.92 cada cuatro semanas durante 340, en adición a las compensaciones semanales que se le hubieren abonado mientras estuvo bajo tratamiento médico incapacitado para trabajar.

Pidió el administrador a la comisión que reconsiderara su resolución y la comisión se negó a ello. Interpuso entonces el presente recurso de revisión, cuya vista tuvo lugar el 24 de noviembre último con la comparecencia de las partes y del abogado Pedro M. Porrata, *amicus curiæ,* que radicó además un extenso alegato sosteniendo el criterio de la comisión.

En el segundo de los casos el obrero Higinio Lliteras el 24 de noviembre de 1939, mientras trabajaba para la P. R. Salt Works, Inc., patrono asegurado, de Cabo Rojo, P. R., sufrió un accidente que le produjo la pérdida de la pierna izquierda más arriba de la rodilla y tan cerca de la cadera que no podría usar pierna artificial, teniendo luego que amputársele la otra pierna.

En agosto 22, 1940, el Fondo del Seguro del Estado por su administrador resolvió que se trataba de un caso de incapacidad parcial permanente con derecho el obrero a recibir una compensación adicional del cincuenta por ciento de su jornal durante 250 semanas en pagos parciales cada cuatro semanas.

No conforme el obrero por entender que no se le liquidó la compensación a base del jornal que ganaba el día del accidente, que dicha compensación no correspondía a la clase

de incapacidad sufrida y que seguía necesitando tratamiento médico, apeló para ante la comisión. Mientras se tramitaba el recurso, se amputó al obrero la pierna que le quedaba. Celebrada la vista de ley, la comisión, en octubre 21 de 1941, dictó sentencia declarando que el obrero había quedado totalmente incapacitado para el trabajo por haber sido necesario amputarle ambas piernas, como consecuencia inmediata del accidente, que el jornal que ganaba cuando el accidente ocurrió era el de $2.15, y que de acuerdo con lo resuelto por ella en los casos C. I. 12139, Félix Narváez (recurso núm. 231) y C. I. 7774, Fermín Rivera, el Administrador del Fondo del Seguro del Estado no estaba autorizado para rebajar del montante de la compensación correspondiente al obrero cantidad alguna por concepto de las dietas semanales que le hubieren sido satisfechas durante su curación.

Pidió reconsideración el administrador y le fué negada. Acudió en revisión entonces para ante este Tribunal. En diciembre once último el administrador y el obrero por conducto de sus abogados estipularon someter el recurso por los alegatos presentados en el de Félix Narváez, número 231, y esta corte, el quince de diciembre aprobó la estipulación.

■ Como en ambos recursos la parte recurrente ha limitado la cuestión a resolver a la interpretación del inciso 4 del artículo 3 de la Ley de Compensaciones por Accidentes del Trabajo—núm. 45 de 1935, (1) pág. 263—, enmendado por la ley núm. 74 de 1940, pág. 531, los dos pueden ser y serán estudiados en esta sola opinión.

Dicho inciso en lo pertinente dispone:

"4. Si como resultado de la lesión o enfermedad, el caso del obrero o empleado fuere resuelto como uno de incapacidad total permanente, el obrero o empleado continuará recibiendo una suma igual a la mitad del jornal que percibía el día del accidente o que hubiera de percibir a no ser por la ocurrencia del accidente, y durante el tiempo que se prolongue esta incapacidad total, pero en ningún caso se pagará más de diez (10) dólares, ni menos de tres (3) dólares semanales, ni se harán pagos a ningún obrero o empleado por más de 340

semanas y la suma pagada no excederá nunca en total de tres mil (3,000) dólares; *Disponiéndose,* que cuando se probare fuera de toda duda razonable que el obrero incapacitado ha de invertir hasta la mitad de la compensación en la adquisición de un hogar o un predio de terreno donde establecerse, se le anticipará inmediatamente hasta la mitad de la compensación que se le hubiere asignado, y el remanente le será liquidado conforme dispone esta Ley.''

Todo gira alrededor del alcance de las palabras *continuará recibiendo* que la ley contiene. A juicio del administrador esas palabras no pueden tener otro significado que el de que el término fijado por la ley comienza a contarse desde que empezó a compensarse al obrero mientras se le tuvo bajo asistencia médica y a juicio de la comisión no tienen ese alcance, si que se refieren a la compensación que debe satisfacerse al obrero después que el caso fuere resuelto como uno de incapacidad total permanente.

Veamos lo que dispone el artículo 3 de la ley en su integridad.

Comienza declarando que todo obrero o empleado que sufriere lesiones o enfermedades ocupacionales dentro de las condiciones que establece el artículo 2 de la ley, tendrá derecho:

1, A la asistencia médica y medicinas que le fueren prescritas;

2, Si la incapacidad fuere temporal, a una compensación de la mitad del jornal, durante el período de incapacidad, no excediendo éste de 104 semanas;

3, Si la incapacidad fuere parcial permanente, a una compensación adicional de un cincuenta por ciento del jornal durante el número de semanas que se inserta en una larga tabla que forma parte de la ley y que oscila entre 5 y 300, no pudiendo en caso alguno pagarse una suma superior a dos mil dólares, y

4, Si la incapacidad fuere total permanente, como ya sabemos a una compensación semanal de la mitad del jornal que

percibía el día del accidente, no excediendo de 340 semanas ni pudiendo pasar la suma total que se pague de tres mil dólares.

Para dar color a la posición del recurrente transcribiremos su propia argumentación después de haber puntualizado las varias disposiciones de la sección tres de la ley a que acabamos de referirnos. Es así:

"Se verá pues, que inmediatamente que un obrero sufre un accidente del trabajo protegido por nuestra ley, se le instituye el tratamiento médico adecuado y se le comienza a pagar la mitad del jornal que ganaba el día del accidente durante el período de su inhabilidad para el trabajo. Al ser dado de alta el obrero, sólo puede ocurrir una de estas tres cosas: el obrero queda en condiciones hábiles para reanudar su trabajo en la forma y manera que lo hacía al tiempo de ocurrirle el accidente; o el obrero queda afectado con una incapacidad parcial permanente, a pesar de la cual puede reanudar su trabajo; o, en último lugar, que el obrero quede totalmente incapacitado para realizar labor remunerativa alguna.

"De acuerdo con el análisis que hemos hecho del derecho que asiste a todo obrero al amparo de esta ley, nos encontramos con que el estatuto determina claramente: que en los casos de incapacidad parcial permanente, o sea cuando el obrero al ser dado de alta del tratamiento médico que ha estado recibiendo, puede reanudar su trabajo, la compensación que se fija es en *adición* de aquella otra compensación que por virtud del 2do. inciso del artículo 3 tiene derecho a recibir durante el período de inhabilidad.

"No sucede lo mismo cuando la ley se refiere a los casos de incapacidad total permanente. En este último caso el estatuto, de manera específica y clara determina que el obrero o empleado lesionado *'continuará recibiendo'* una suma igual a la mitad del jornal que percibía el día del accidente o que hubiere de percibir a no ser por la ocurrencia del accidente y durante el tiempo que se prolongue dicha incapacidad total, pero en ningún caso se prolongará dicho pago por más de 340 semanas.

"Si la intención del legislador hubiese sido darle al obrero el beneficio de la compensación durante el tratamiento médico y una compensación distinta y adicional por su incapacidad total permanente, lo hubiera expresado así con la misma diáfana claridad con que lo expresó al referirse a las compensaciones en los casos de incapacidad parcial permanente."

Quiere decir que el Administrador del Fondo del Seguro del Estado recurrente ha venido interpretando y poniendo en práctica la ley en el sentido de que el inciso dos de su artículo tres rige para el caso de incapacidad temporal a que expresamente se refiere y para el de incapacidad parcial permanente, inciso tres, pero no para el de incapacidad total permanente, inciso cuatro, por la única razón de que el legislador usó las palabras "recibirá una compensación adicional" en el inciso tres y "continuará recibiendo" en el inciso cuatro.

No tiene razón a nuestro juicio. Aunque hubiera sido más claro que el legislador hubiera usado el mismo lenguaje en los incisos tres y cuatro y hubiera sido más explícito en el dos, opinamos que si se ha reconocido la existencia de un período transitorio durante el cual el obrero lesionado recibe asistencia médica y una compensación semanal, tal reconocimiento debe regir lo mismo para el caso de incapacidad parcial permanente que para el de incapacidad total permanente.

El uso de las palabras "compensación adicional" y "continuará recibiendo" conllevan la misma significación. *En adición* a lo ya recibido en el primer caso—incapacidad parcial permanente—el obrero *recibirá* compensación durante las semanas que fija la tabla de acuerdo con la, clase de lesión,-y en el segundo caso—incapacidad total permanente—el obrero *continuará recibiendo compensación durante las semanas que especifica,* lo que envuelve sí la idea de continuación pero no la de la compensación que determina el inciso, sino la de la ayuda que el Seguro del Estado viene obligado a proporcionar inmediatamente al obrero lesionado en todos los casos.

La realidad de los hechos impone ese primer período transitorio, con ayuda, porque no siempre puede fijarse en seguida el alcance de la lesión. El propio recurso número 233 muestra un claro ejemplo de ello. El obrero perdió primero una pierna y se calificó propiamente el accidente de incapacidad parcial permanente. Luego, mientras su apela-

ción se tramitaba en la comisión, le fué amputada la otra pierna como consecuencia del mismo accidente, teniendo éste que calificarse entonces de incapacidad total permanente, de conformidad con lo prescrito en el párrafo segundo del inciso cuarto del artículo tres de la ley.

*En tal virtud debe resolverse no haber lugar a dejar sin efecto las resoluciones cuya revisión se pide en ambos recursos, el 231 y el 233.*

El Juez Asociado Sr. Snyder no intervino.